## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 09 2016, 8:42 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Philip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Jones,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 9, 2016

Court of Appeals Case No.
71A03-1509-CR-1391

Appeal from the St. Joseph
Superior Court

The Honorable
Elizabeth Hardtke,
Judge

Trial Court Cause No.
71D01-1505-CM-1289

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Christopher Jones (Jones), appeals his conviction and sentence for battery, a Class A misdemeanor.

We affirm.

## ISSUES

Jones raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion in admitting certain evidence; and

(2) Whether there was sufficient evidence to establish Jones' conviction for battery beyond a reasonable doubt.

## FACTS AND PROCEDURAL HISTORY

Jones and Jacqueline Brown (Brown), were in a romantic relationship and lived together. On May 2, 2015, Brown called the South Bend Police Department regarding an assault. Shortly thereafter, Officer Joshua Brooks (Officer Brooks) and another officer arrived at Brown's residence. Officer Brooks encountered Brown on her front porch, she was hysterical, had bruises on her face, and swellings around her eyes. Officer Brooks asked Brown if she needed medical attention, but Brown declined. Brown then gave a description of her assailant, Jones, as a "skinny black male with curly hair and gray beard." (Transcript p. 26). Moments later, the officers were notified over the radio that Jones had been arrested at a local Burger King. Both officers left Brown's residence. When they arrived at Burger King, the officers found that Jones had been

restrained in handcuffs. Upon searching his person, Officer Brooks found Jones in possession of "two cell phones in his right front pocket." (Tr. p. 27). Jones was then transported to jail.

[5] "Somewhere between 10 to 15 minutes" later Officer Brooks and the other officer returned to Brown's residence. (Tr. p. 35). Since Brown was still frantic, Officer Brooks had to calm her down. Brown at first informed Officer Brooks that "somebody she did not know was trying to break in through her bedroom window, and once he got in[,] he hit her with both hands several times, and somehow they ended up from the bedroom to the living room." (Tr. p. 37). Brown also stated that her assailant grabbed her cell phone and then "knocked her out." (Tr. p. 37). At the close of the interview, Brown informed Officer Brooks that her assailant was Jones. Brown also identified the two cell phones recovered from Jones as hers.

[6] On May 4, 2015, the State filed an Information, charging Jones with Count I, battery resulting in bodily injury, a Class A misdemeanor; Count II, theft, a Class A misdemeanor; and Count III, resisting law enforcement, a Class A misdemeanor. On June 25, 2015, the trial court held Jones' bench trial. At the conclusion of trial, the trial court entered a not guilty judgment on theft, but guilty judgments for battery, and resisting law enforcement. On the same day, the trial court sentenced Jones to an all executed consecutive sentence of 180 days for battery, and 365 days for resisting law enforcement.

[7] Jones now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Brown's Prior Statements*

[8] Jones seeks a reversal of his battery conviction in this case on grounds that the trial court abused its discretion by admitting Brown's inconsistent statements as substantive evidence. The decision to admit evidence is within the trial court's discretion and is afforded great deference on appeal. *Carpenter v. State*, 786 N.E.2d 696, 702 (Ind. 2003). We will not reverse the trial court's decision unless it represents a manifest abuse of discretion that results in the denial of a fair trial. *Id*. An abuse of discretion in this context occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Id*. "Even when a decision on the admissibility of evidence is an abuse of discretion, we will not reverse a judgment where that error is harmless, that is, where the error did not affect the substantial rights of a party." *Dixon v. State*, 967 N.E.2d 1090, 1092 (Ind. Ct. App. 2012).

[9] Our supreme court has stated that "[o]rdinarily, prior inconsistent statements are used to impeach, not as substantive evidence of the matter reported." *Young v. State*, 746 N.E.2d 920, 926 (Ind. 2001). In other words, a prior inconsistent statement used to impeach a witness's credibility is not hearsay. *See Martin v. State*, 736 N.E.2d 1213, 1217 (Ind. 2000). At Jones' trial, Brown's account of events changed. Brown made two different statements about Jones battering her, one to the police and one on direct examination. The State's questioning of Brown at trial highlighted that the two statements were inconsistent. The

fact that the statement she gave to the police prior to trial was different from the statement she made as a witness at the hearing called into question whether Brown was lying when she spoke to the police or if she was lying on the witness stand.

[10]   Jones' underlying contention here is that the admission of Brown's prior statement that Jones assaulted her to the officers might have allowed the trial court to wrongly consider her statement as substantive evidence. This concern does not render Brown's statement inadmissible. If Jones believed there was a danger that the trial court would use the statement as substantive evidence, then it was incumbent upon him to request that the trial court consider the statement only to determine Brown's credibility. *See* Ind. Evidence Rule 105.

[11]   Moreover, we note that the bulk of the evidence against Jones was admitted under the excited utterance exception of the hearsay rule. An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Ind. Evidence Rule 803(2). Application of this rule is not mechanical, and the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. *Palacios v. State*, 926 N.E.2d 1026, 1030-1031 (Ind. Ct. App. 2010). The focus is on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event. *Id*. The amount of time that has passed between the event and the statement is not dispositive; rather, the issue is whether the declarant was still under the stress of excitement caused by the startling event when the

statement was made. *Mathis v. State*, 859 N.E.2d 1275, 1279 (Ind. Ct. App. 2007).

[12] When Officer Brooks and the other officer arrived at Brown's residence, Brown appeared shaken up and distraught, she was crying, had some blood on her face, and some swelling to her eyes. Brown informed the officers that she had been assaulted by an unknown "skinny black male with curly hair and gray beard." (Tr. p. 26). Moments later, the officers left after learning that Brown's assailant, Jones, had been arrested at a local Burger King. After about 10-15 minutes, the officers returned to Brown's residence. Brown was still hysterical. Officer Brooks had to calm her down. Brown then narrated the assault to the officers. The statements she made to officers were made a short time after the physical altercation with Jones. Her behavior and comments show that, at the time, she was under the stress of excitement caused by the altercation with Jones, her statements related to the altercation, and they were admissible under Ind. Evidence Rule 803(2).

## II. *Sufficiency of the Evidence*

[13] Jones argues that the evidence was insufficient to sustain his conviction for Class A misdemeanor battery. When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We neither reweigh the evidence nor assess the credibility of witnesses. *Id*. Unless no reasonable fact-finder could conclude the elements of

the crime were proven beyond a reasonable doubt, we will affirm the conviction. *Id.*

[14] Indiana Code section 35-42-2-1 (b) provides that a person who knowingly or intentionally "touches another person in a rude, insolent, or angry manner … commits battery, a Class B misdemeanor." However, the offense is a Class A misdemeanor if it results in bodily injury to any other person. Ind. Code § 35–42-2-1(c). In charging Jones, the State alleged that "On or about May 2, 2015, . . . Jones did knowingly or intentionally touch . . . Brown in a rude, insolent, or angry manner, resulting in bodily injury. . . ." (Appellant's App. p. 1).

[15] During Jones' bench trial, Brown testified that on the day of the incident, she spoke with the South Bend police officers. Brown stated that she informed the officers that she was in bed when someone entered her home through a window. Brown stated that the individual struck her. In addition, Officer Brooks' testimony established that he encountered Brown at the porch of her residence when they arrived. Officer Brooks indicated that Brown was hysterical, crying, and had some blood on her face. The officer's narration of Brown's account of events, which was admitted under the excited utterance exception of the hearsay rule, presented that Jones struck Brown several times and knocked her unconscious.

[16] Upon review, we conclude that the State presented sufficient evidence to sustain Jones' conviction for Class A misdemeanor battery. The record demonstrates that Jones hit Brown, causing her pain. Jones' claim to the

contrary merely amounts to an invitation for this court to reweigh the evidence, which we will not do. *See Drane*, 867 N.E.2d at 146.

## CONCLUSION

Based on the foregoing, we conclude that (1) the trial court did not abuse its discretion by admitting Brown's prior statements to the police; (2) there was sufficient evidence supports Jones' conviction for Class A misdemeanor battery.

Affirmed.

Najam, J. and May, J. concur